1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  FENWICK & WEST LLP
   555 California Street, 12th Floor
3  San Francisco, CA  94104
   Telephone:     415.875.2300
4  Facsimile:     415.281.1350

5  ANGEL CHIANG (CSB No. 280546)
   achiang@fenwick.com
6  AVERY L. BROWN (CSB No. 313478)
   avery.brown@fenwick.com
7  FENWICK & WEST LLP
   801 California Street
8  Mountain View, CA 94041
   Telephone:     650.988.8500
9  Facsimile:     650.938.5200

10  Attorneys for Plaintiff
    SCRIBD, INC.

11

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                            OAKLAND DIVISION

15

16  SCRIBD, INC.,                          Case No.: 4:17-cv-02765-JSW

17              Plaintiff,

18       v.                                **APPLICATION FOR TEMPORARY
                                           RESTRAINING ORDER AND ORDER
19                                         TO SHOW CAUSE RE PRELIMINARY
    SCRIBD-DOWNLOAD.COM, JOHNY             INJUNCTION; FOR LEAVE TO
20  HENDRICKS, LE QUANG MINH, a/k/a MINH   SUBPOENA THIRD PARTIES TO
    LE, and DOES 1 through 10,             DETERMINE IDENTITY OF
21                                         DEFENDANTS; MEMORANDUM OF
              Defendant.                   POINTS AND AUTHORITIES IN
22                                         SUPPORT**

23                                         Date:
                                           Time:
24                                         Dept.: Courtroom 5 – 2nd Floor
                                           Judge: District Judge Jeffrey S. White
25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................... 3

II.    FACTUAL BACKGROUND ................................................................................... 4

       A.     Scribd, Its Service, and the SCRIBD Mark................................................ 4

       B.     Defendants' Exploitation of Scribd's Fame ............................................... 6

       C.     Scribd's Attempts to Stop Defendants' Activities ...................................... 8

III.   SCRIBD DESERVES AN IMMEDIATE RESTRAINING ORDER TO PREVENT
       FRAUD AND TO PROTECT ITS BRAND AND REPUTATION............................ 10

       A.     The Standard for a Temporary Restraining Order ................................. 10

       B.     Scribd Is Likely to Succeed on the Merits. ............................................. 11

              1.     Scribd Is Likely to Succeed on the Merits of Its Computer Fraud and
                     Abuse Act Claim.......................................................................... 11

              2.     Scribd Is Likely to Succeed on the Merits of Its Cybersquatting Claim... 12

                     a.     Defendants Registered and Are Using the Scribd-Download.com
                            Domain Name. ................................................................. 12

                     b.     Defendants' Domain Names Include and Is Nearly Identical to
                            Scribd's Protected SCRIBD Mark. .................................. 13

                     c.     Defendants Acted with Bad Faith. .................................... 13

              3.     Scribd Is Likely to Succeed on the Merits of Its Trademark
                     Infringement, False Designation of Origin, and Unfair Competition
                     Claims. .......................................................................................... 15

              4.     Scribd Is Likely to Succeed on the Merits of Its Trademark Dilution
                     Claim............................................................................................. 17

       C.     Defendants' Actions Have Caused and Will Continue to Cause Irreparable
              Harm to Scribd. ...................................................................................... 18

       D.     The Balance of Harms Sharply Favors Scribd..................................... 21

       E.     Allowing Defendants to Maintain Their Deceptive Website Would Not Serve
              the Public Interest, So a Restraining Order Is Appropriate.................. 22

IV.    THE COURT SHOULD GRANT LEAVE FOR SCRIBD TO SUBPOENA THIRD
       PARTY INTERNET SERVICE PROVIDERS TO DETERMINE DEFENDANTS'
       IDENTITIES ....................................................................................................... 23

V.     CONCLUSION ................................................................................................... 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page

CASES

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................................... 11

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ............................................................................... 18

*Amoco Prod. Co. v. Vill. of Gambell, Alaska*,
480 U.S. 531 (1987) ............................................................................................... 21

*Brookfield Communications, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........................................................................ 15, 17

*Cadence Design Sys., Inc. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ................................................................................. 22

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) ............................................................................... 15

*Cherokee Inc. v. Wilson Sporting Goods Co.*,
2015 WL 12656935 (C.D. Cal. June 19, 2015) ..................................................... 20

*China Cent. Television v. Create New Technology (HK) Ltd.*,
2015 WL 3649187 (C.D. Cal. June 11, 2015) ....................................................... 20

*Craigslist v. 3Taps Inc., et al.*,
942 F. Supp. 2d 962 (N.D. Cal. 2013) ................................................................... 12

*Credit Bureau Connection, Inc. v. Pardini*,
726 F. Supp. 2d 1107 (E.D. Cal. 2010) ................................................................. 11

*DSPT Int'l, Inc. v. Nahum*,
624 F.3d 1213 (9th Cir. 2010) ............................................................................... 12

*F.T.C. v. John Beck Amazing Profits, LLC*,
2009 WL 7844076 (C.D. Cal. Nov. 17, 2009) ...................................................... 23

*Facebook, Inc. v. Grunin*,
77 F. Supp. 3d 965 (N.D. Cal. 2015) ..................................................................... 21

*Facebook Inc. v. Power Ventures, Inc. et al.*,
— F.3d —, 2016 WL 7190690 (9th Cir. Dec, 9, 2016), *petition for cert. filed*,
—U.S.L.W.— (U.S. Mar. 13, 2017) ...................................................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000)..................................................................15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,*
    415 U.S. 423 (1974) .................................................................................10

*Indep. Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly,*
    572 F.3d 644 (9th Cir. 2009)....................................................................22

*Lahoti v. VeriCheck, Inc.,*
    586 F.3d 1190 (9th Cir. 2009)..................................................................13

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,*
    633 F.3d 1158 (9th Cir. 2011)............................................................16, 18

*Lockheed Missile & Space Co., Inc. v Hughes Aircraft Co.,*
    887 F. Supp. 1320 (N.D. Cal 1995) .........................................................10

*Malibu Media, LLC v. Doe,*
    2016 WL 1618227 (S.D. Cal. April 22, 2016) .........................................23

*Moroccanoil, Inc. v. Moroccan Gold, LLC,*
    590 F. Supp. 2d 1271 (C.D. Cal. 2008), *overruled on other grounds by Anhing*
    *Corp. v. Thuan Phong Co. Ltd.,* 2013 WL 11328422 (C.D. Cal. Dec. 26, 2013).........21, 22, 23

*Panavision Intern., L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998)..................................................................21

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991)...............................................................18, 19

*S & C Elec. Co. v. Contreras,*
    2011 WL 673740 (N.D. Cal. Feb. 17, 2011) ...........................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.,*
    240 F.3d 832 (9th Cir 2001).....................................................................10

*Super-Krete Int'l, Inc. v. Sadleir,*
    712 F. Supp. 2d 1023 (C.D. Cal. 2010) ...............................................19, 22

*Triad Sys. Corp. v. Se. Exp. Co.,*
    64 F.3d 1330 (9th Cir. 1995), *superseded on other grounds as stated in Apple,*
    *Inc. v. Psystar Corp.*.................................................................................22

*UMG Recording, Inc. v. Doe,*
    2008 WL 4104214 (N.D. Cal. 2008).........................................................23

*Wood v. Apodaca,*
    375 F. Supp. 2d 942 (N.D. Cal. 2005) .....................................................15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**STATUTES**

15 U.S.C. 1125(d) ...................................................................................................................13

15 U.S.C. §§ 1057(b), 1115(a) ..............................................................................................15

15 U.S.C. Section 1114 ...........................................................................................................15

15 U.S.C. Section 1125(a) .......................................................................................................15

15 U.S.C. § 1125(d) ...........................................................................................................12, 14

18 U.S.C. § 1030(a)(2)(C) ......................................................................................................11

18 U.S.C. § 1030(e) .................................................................................................................12

18 U.S.C. Sections 1030(g) 1030(c)(4)(A)(i)(I) .....................................................................12

Cal. Bus. & Prof. Code § 14247 .............................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 ...............................................................................................................1, 23

Fed. R. Civ. P.65(b) ..................................................................................................................1

Local Rule 65-1 .........................................................................................................................1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    TO: DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 65(b) and

3    Civil Local Rule 65-1, Plaintiff SCRIBD, INC. ("Scribd") hereby moves the Court for a

4    temporary restraining order enjoining Defendants and those in active concert of participation with

5    them:

6        a)    from further use of Scribd's SCRIBD trademark in connection with the

7    identification of their website or business;

8        b)    from further use of the Scribd-Download.com domain;

9        c)    from transferring Scribd-Download.com to any other person or entity other than

10   Scribd;

11       d)    from all further accessing and downloading of content from Scribd.com or the

12   Scribd Platform without Scribd's written authorization.

13   Scribd moves on the ground, set forth more fully in the accompanying Memorandum of

14   Points and Authorities, that Defendants' refusal to cease operation of their infringing Scribd-

15   Download.com domain, including their unauthorized access to and distribution of content from

16   the Scribd.com website, is causing Scribd immediate and irreparable harm by diverting customers

17   and potential customers, diminishing and diluting Scribd's goodwill, and misusing Scribd's

18   computer information without authority.  Defendants are confusing the public through their use of

19   marks confusingly similar to the registered SCRIBD trademark on and in connection with the

20   promotion, marketing, selling, display and distribution of products and services unauthorized by

21   Scribd.  Defendants' actions, among other things, constitute trademark infringement, false

22   designation of origin, cyberpiracy, trademark dilution, and unfair competition.  Further, the

23   continued accessing of Scribd's content, in spite of Scribd's express revocation of Defendants'

24   authorization to do so and in evasion of Scribd's attempts to block Defendants' IP address,

25   constitutes a violation of the Computer Fraud and Abuse Act.  Defendants have no defense to

26   their infringing conduct, and Scribd therefore deserves a temporary restraining order to preserve

27   its business.

28   In addition, Scribd seeks leave pursuant to Fed. R. Civ. P. 45 to subpoena third parties

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  known to have business dealings with Scribd-Download.com, including, without limitation,

2  Heymman Servers and Cloudflare, Inc., so that Scribd may determine the identities and

3  whereabouts of Defendants to complete service of process and naming of Does.

4       Scribd bases this Motion on the accompanying Memorandum of Points and Authorities

5  and declarations of Jason Bentley ("Bentley Decl.") and Angel Chiang ("Chiang Decl.") and the

6  exhibits attached thereto, the records before this Court, all matters of which this Court may take

7  judicial notice, and oral argument at the hearing on this matter.

8

9  Dated:  May 15, 2017                          FENWICK & WEST LLP

10

11                                              By: /s/ Laurence Pulgram
                                                    LAURENCE PULGRAM

12

13                                              Attorneys for Plaintiff
                                                SCRIBD, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3      Plaintiff SCRIBD, INC. ("Scribd") owns and operates a content management platform

4 through www.Scribd.com, which allows users to access the world's largest collection of e-books,

5 articles, sheet music, and other written works, as well as publish and share their own written

6 works.  Since its launch in March 2007, Scribd has used the SCRIBD mark in connection with its

7 products and services to develop a brand that tens of millions of readers around the world

8 associate with the sharing of written knowledge.  This application seeks a temporary restraining

9 order to halt immediately Defendants' operation of a flagrantly infringing website, Scribd-

10 Download.com, which not only misuses Scribd's registered trademark, but also is accessing and

11 distributing, without authorization, Scribd's computerized library of content.

12      Defendants' Scribd-Download.com website, by accessing the Scribd's computerized

13 database without authorization, allows members of the public to download content from Scribd

14 without signing up or registering for a Scribd account or paying a subscription fee.  Defendants

15 have selected and used the Scribd-Download.com domain with obvious and undeniable bad faith

16 intent to profit from the false association between the domain name and the Scribd brand.  When

17 Scribd demanded that Defendants cease and desist, Defendants' responded on May 10, 2017, not

18 only refusing to desist, but also pasting into their website a preposterous new explanation of their

19 use of the SCRIBD mark—claiming their use referred not to Plaintiff's Scribd.com platform but

20 is a new acronym for "Speedy crazy randomly internet book and document."  Declaration of

21 Jason Bentley ("Bentley Decl.") ¶ 22, Ex. 8; Declaration of Angel Chiang ("Chiang Decl.") ¶¶ 6–

22 9, Exs. E–G.  Defendants are thus flagrantly seeking to divert customers seeking the same

23 services Scribd provides, and using the SCRIBD mark—as well as Scribd's own content—to

24 undermine Scribd's business.

25      Scribd seeks this Court's emergency relief because Defendants' have circumvented

26 Scribd's numerous attempts over the last two weeks to stop their unlawful conduct by other

27 means.  Defendants' infringing website has caused, and continues to cause, Scribd harm in

28 numerous ways, including customer confusion, trademark dilution, and diversion of actual and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

potential Scribd customers.  Because of Defendants' bad faith and the substantial risk that Defendants may remove the domain from this jurisdiction, and because the harm to Scribd is immediate and ongoing, Scribd respectfully requests this Court's immediate assistance to halt Defendants' unlawful conduct and prohibit transfer of the infringing domain to another party.

Scribd specifically requests that this Court issue a temporary restraining order requiring Defendants immediately to cease all use of the Scribd-Download.com domain and the SCRIBD mark, discontinue all unauthorized access to and download of content from Scribd's computers and databases, and refrain from transferring the Scribd-Download.com domain name to any person other than Scribd.

## II.    FACTUAL BACKGROUND

### A.    Scribd, Its Service, and the SCRIBD Mark

Scribd is a digital library and subscription service offering users access to the world's largest collection of e-books, articles, sheet music, and other written works on its website Scribd.com.  Bentley Decl. ¶ 2.  In addition to its membership book service, Scribd also offers the world's most popular open platform for publishing and sharing documents, which allows users to publish their work on the site and reach millions of Scribd users around the world.  *Id.*  Together, Scribd's digital library and publishing platform is called the "Scribd Platform," which allows for the authorized upload, download, purchase, sale, sharing and distribution of digital content over the internet.  *Id.*  Launched in March 2007, Scribd has garnered 80 million monthly readers in over 180 countries worldwide, and has been called "the Netflix for books."  Bentley Decl. ¶ 3.

There are different types of content that users can access on the Scribd Platform.  The first is premium content—*e.g.*, content from professional publishers and distributors, including best sellers and classics—which Scribd users can access solely in read-only format and not for download.  Bentley Decl. ¶ 4.  Premium content is accessible when users sign up for Scribd's Subscription Reading Service, whereby users pay a monthly fee for a certain number of credits to premium e-books and audiobooks.  *Id.*  The second type of content is User-Generated Content ("UGC"), which includes tens of millions of written works uploaded by Scribd users, ranging from court pleadings to articles to self-published texts of all kinds.  Bentley Decl. ¶ 5.  Scribd

1  members who register for the Scribd service and agree to its terms of use are able to download

2  UGC content by clicking a download button on the Scribd.com website, which then transmit the

3  copy from Scribd's servers to the user.  *Id.*

4      UGC that is uploaded to Scribd is also generally "archived" after approximately 60 days.

5  Bentley Decl. ¶ 6.  Once a document is archived, a user who wishes to download the document

6  must sign up for a Scribd "archive membership" in order to access and download it.  *Id.*  Users

7  can sign up for a free 30-day trial of Scribd and have unlimited access to archived content for the

8  first 30 days, but thereafter must pay a monthly fee (presently $8.99) for the archive membership.

9  *Id.*

10      Although Scribd users are allowed unlimited access to UGC during their free 30-day trial,

11  they are required to register for a Scribd account to activate their free trial.  Bentley Decl. ¶ 7.

12  This is so that Scribd can learn about the user's reading preferences and habits and recommend

13  relevant content to the user in order to convert the user to a paid subscriber.  *Id.*  Scribd's free trial

14  service, and its free UGC content, are important marketing tools for Scribd to introduce users to

15  the service and learn of their interests in hopes that the user will eventually sign up for Scribd's

16  archive membership service or Subscription Reading Service.  *Id.*  For this reason, user

17  registrations are critical to Scribd because each registration presents an opportunity for Scribd to

18  convert the user into a paying member.  *Id.*  Likewise, knowledge of what materials users are

19  interested in, and especially what materials they have downloaded, is critical to Scribd's business

20  and ability to convert browsers into paid users.  *Id.*

21      Since its launch in 2007, Scribd has used the word mark SCRIBD to represent its products

22  and services, in particular, on its website www.Scribd.com.  Bentley Decl. ¶ 8.  This mark is

23  fanciful and not a real word; indeed, "Scribd" has no meaning other than to refer to Plaintiff

24  Scribd, Inc.  *Id.*

25      Scribd owns a federal registration for the SCRIBD word mark in connection with

26  "computer software for sharing electronic documents via electronic, optical and wireless

27  networks," "on-line retail store services in the nature of an on-line marketplace featuring

28  documents of others ranging across a wide field of topics for viewing, downloading and printing,"

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"transmission of data or documents via electronic, optical and wireless networks," and "providing temporary use of non-downloadable computer software for sharing, viewing, electronically transmitting, searching, browsing, sharing, tagging, rating, downloading and flagging electronic documents via electronic, optical and wireless networks; providing computer website services, namely, interactive hosting services which allow a user to publish and share their own content and images on-line featuring user-uploaded electronic documents." Bentley Decl. ¶ 9, Ex. 1. Scribd has held a federal registration in the SCRIBD word mark since April 2010. *Id.*

**B.     Defendants' Exploitation of Scribd's Fame**

Defendants have traded off Scribd's fame by registering the domain for and using Scribd-Download.com, which includes and is confusingly similar to the SCRIBD mark and Scribd's www.Scribd.com domain name. Not only does Scribd-Download.com use Scribd's trademark, but it allows members of the public to download content from the Scribd Platform without signing up and registering for a Scribd account or paying a subscription fee. Bentley Decl. ¶ 11. The website prompts users to enter a document URL from Scribd into its search bar and click "Download Now!" *Id.* ¶ 12. Users are then given the option to receive the document as a downloadable .PDF or .TXT file format. *Id.* After the user selects the preferred format, the document is then immediately downloaded directly to the user, without requiring any visit to or registration on the Scribd site. *Id.*

Defendants have exploited Scribd's fame by confusing users as to the source or affiliation of Scribd-Download.com, diverting traffic from Scribd's website, and depriving Scribd of the opportunity to convert users who otherwise would have visited Scribd.com into paying Scribd users. Indeed, as show in the screenshot below, Scribd-Download.com has, until its revisionist edits to its website last week, touted itself as directly focused on competing with Scribd and only Scribd:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Bentley Decl. ¶ 17, Ex. 4.  As reflected above, Defendants' website claimed to be "a best [sic] online scribd downloader service that allow [sic] you to download documents from Scribd.com for free.  You only need to input Document URL, we will get the download link and send it to your browser.  Our service is totally free."  The Scribd-Download.com website further included, as an example in the window into which URLs were to be pasted, a URL at Scribd.com.  *Id.*

   In addition to allowing users to download Scribd's content without paying or registering, Scribd-Download.com also diverts traffic away from Scribd.com.  One of the ways users find content on Scribd—and become familiar with Scribd.com in the first place—is by searching for content they want using a search engine like Google.  Bentley Decl. ¶ 15.  If a document is available on Scribd, a Google search will display a search result with a link to that document and its URL within the Scribd.com website.  *Id.*  When a user searches on Google for a document being hosted on Scribd.com that Scribd-Download.com also offers for download, however, the result is the display of competing search results: one providing access to the particular document on the original Scribd.com website, and the other providing access through the Scribd-Download.com website.  *Id.*, Ex. 2.  By clicking on the Scribd-Download.com search result, users

Fenwick & West LLP
Attorneys at Law
San Francisco

1  obtain Scribd's product and service through the competing Scribd-Download.com website, thus

2  being diverted from ever visiting Scribd.com.  Bentley Decl. ¶ 15.

3      **C.      Scribd's Attempts to Stop Defendants' Activities**

4          Scribd first learned of Scribd-Download.com through DMCA notices from authors

5  complaining *to Scribd* that the authors' works were available for download on the Scribd-

6  Download.com website.  Bentley Decl. ¶ 16.  It was clear from these DMCA notices that users

7  were confused and under the impression that Scribd-Download.com was associated or affiliated

8  with Scribd.  *Id.*; *see, e.g.*, *id.*, Ex. 3.  Scribd undertook an investigation of Scribd-Download.com

9  to try to ascertain who was behind the website.  Bentley Decl. ¶ 18.  An investigation into the

10  "Who Is" domain registration for Scribd-Download.com revealed that the domain was registered

11  to a Johny Hendricks of 242 Mills Street, Ogden, UT 84404 on October 26, 2016, using the email

12  address slidehot.com@gmail.com.  *Id.*, Ex. 5.

13          On May 1, 2017, Scribd's outside counsel sent a cease and desist letter to Mr. Hendricks

14  at that email and physical address demanding that he discontinue operating Scribd-

15  Download.com.  Bentley Decl. ¶ 19, Ex. 6; Chiang Decl. ¶ 2, Ex. A.  The letter also expressly

16  revoked all authorization to access, display, download, or otherwise use Scribd's website or

17  content.  *Id.*  Scribd received no response to this letter.  Bentley Decl. ¶ 19; Chiang Decl. ¶ 2.

18          Having received no response from Mr. Hendricks, Scribd's operations engineers

19  continued investigating and discovered that Scribd-Download.com was using a hosting service

20  called Cloudflare, which allows websites to mask their IP addresses and true ISP servers behind a

21  proxy.  Bentley Decl. ¶ 20.  Scribd's engineers were eventually able to discover Scribd-

22  Download.com's true IP address, IP 185.191.228.145, and found that it was being hosted by

23  Heymman Servers, which has servers located in Kansas City and Chicago.  *Id.*, Ex. 7.  Scribd

24  reached out to Heymman Servers and asked that they cease hosting Scribd-Download.com.

25  Bentley Decl. ¶ 22.  In response, Heymman advised that its customer had agreed to remove

26  Scribd-Download.com within 48 hours.  *Id.*, Ex. 8.  Nonetheless, the Scribd-Download.com

27  website continued to operate.  Bentley Decl. ¶ 22.

28          Scribd's engineers also blocked Defendants' IP address from further accessing Scribd's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  website or content.  Bentley Decl. ¶ 21.  Nonetheless, Defendants appear to have obtained new IP

2  addresses, and have continued to access and distribute downloads of works from the Scribd.com

3  website.  *Id.*

4        As explained in the attached declarations, Scribd also identified two additional email

5  addresses associated with Scribd-Download.com.  One was provided on the website under a link

6  for "Trademark"—identifying scribd-download@gmail.com.  Chiang Decl. ¶ 5.  The other was

7  the address provided by PayPal for sending voluntary contributions to support the website,

8  lqm1010@gmail.com, which is associated with Le Quang Minh, apparently a Vietnamese

9  resident.  Chiang Decl. ¶¶ 3–4, Exs. B, C.

10       On May 10, 2017, Scribd again sent the May 1, 2017 cease and desist letter to both

11 scribd.download.com@gmail.com and lqm1010@gmail.com, again demanding that Defendants

12 immediately discontinue operating Scribd-Download.com, and expressly revoking any

13 authorization to continue accessing or downloading content from Scribd.com.  Chiang Decl. ¶ 6.

14 That same day, at approximately 11:50 p.m. Pacific Time (1:50 p.m. on May 11, 2017, Vietnam

15 Time), Scribd received a response from scribd.download.com@gmail.com.  Chiang Decl. ¶ 7,

16 Ex. D.  The response confirmed that the cease and desist letter had been received, and though it

17 did not identify the name of the person responding, it did purport to speak on behalf of Scribd-

18 Download.com.  *Id.*  The response refused to take down Scribd-Download.com, and claimed that

19 "Scribd-Download" was not infringing because the SCRIBD mark purportedly was not being

20 used to refer to Scribd's services on Scribd.com, but rather was being used as an acronym for

21 "Speedy crazy randomly internet book & document download."  *Id.*

22       Scribd further noticed that Defendants had, after receipt of Scribd's cease and desist letter

23 now changed the appearance of Scribd-Download.com.  Chiang Decl. ¶ 8.  The revised website

24 kept the same "Scribd Download" name but now removed references to Scribd.com.  *Id.*  The

25 website previously described itself as "a best [sic] online scribd downloader service that allow

26 [sic] you to download documents **from Scribd.com** for free" (emphasis added).  *Id.*, Ex. E.  This

27 reference was now removed.  The website's search bar prompting users to insert a "scribd link,"

28 with an example URL in grey text from Scribd.com was also removed.  *Id.*  Scribd-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Download.com's homepage now only asks users to "enter your document URL."  Chiang Decl.

2   ¶ 9, Ex. F.  The homepage was revised to assert that "Scribd-Download is mean [sic] 'speedy

3   crazy randomly internet book & document download," and that "[t]his domain **is not related** with

4   any other websites."  (emphasis in original).  *Id.*  Even so, Defendants' efforts to scrub all

5   references to Scribd.com from their website were incomplete: when a user hovers over the

6   Facebook "Like" button on Scribd-Download.com, a pop-up text box still states: "Like Scribd

7   Downloader: Download **Scribd.com** Free Instantly".  Chiang Decl. ¶ 9, Ex. G (emphasis added).

8   Following receipt of Defendants' May 10, 2017 response to Scribd's cease and desist

9   letter, Scribd contacted Defendants again on May 11, explaining why their response was

10  insufficient, reiterating that they needed to discontinue the use of the Scribd-Download.com site

11  immediately, and asking for the identity of the person writing for Defendants.  Chiang Decl. ¶ 10.

12  Defendants failed to respond.  *Id.*  The next day, May 12, 2017—within 40 hours after first

13  hearing from Defendants in response to the cease and desist letter—Scribd filed the present

14  action.  *Id.*  The next court day Scribd filed this application.

15  **III.   SCRIBD DESERVES AN IMMEDIATE RESTRAINING ORDER TO PREVENT
         FRAUD AND TO PROTECT ITS BRAND AND REPUTATION.**

16

17  Scribd faces irreparable harm to its brand and reputation unless this Court enjoins

18  Defendants from continuing to misuse the Scribd mark to promote their unaffiliated and

19  misleading services, and from continuing to access and download content from the Scribd

20  Platform in defiance of Scribd's repeated requests.

21  **A.   The Standard for a Temporary Restraining Order**

22  A temporary restraining order "prevent[s] irreparable harm" until a hearing can occur

23  regarding whether a preliminary injunction should issue. *Granny Goose Foods, Inc. v.*

24  *Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  A temporary

25  restraining order requires the same showing a preliminary injunction requires.  *Stuhlbarg Int'l*

26  *Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir 2001); *Lockheed Missile*

27  *& Space Co., Inc. v Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal 1995).  A plaintiff

28  generally must demonstrate (1) that he is likely to succeed on the merits, (2) that he will likely

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities weighs

2   in his favor, and (4) that relief advances the public interest.  *Alliance for the Wild Rockies v.*

3   *Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation omitted).  The Ninth Circuit recognizes

4   a sliding scale of the factors, where "[a] preliminary injunction is appropriate when a plaintiff

5   demonstrates . . . that serious questions going to the merits were raised and the balance of

6   hardships tips sharply in the plaintiff's favor, . . .  so long as the plaintiff also shows that there is a

7   likelihood of irreparable injury and that the injunction is in the public interest." *Id* at 1134-35.

8       Likelihood of success on just a single claim is sufficient to favor the issuance of a

9   temporary restraining order.  *S & C Elec. Co. v. Contreras*, 2011 WL 673740, at *2 (N.D. Cal.

10  Feb. 17, 2011) (TRO granted where plaintiff was "likely to succeed on the merits of at least one

11  of its eight claims for relief"); *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107,

12  1124 (E.D. Cal. 2010) (TRO granted where plaintiff established a likelihood of success on only

13  some of its claims).

14      **B.    Scribd Is Likely to Succeed on the Merits.**

15      In this action, Scribd is likely to succeed on each of its claims.  The wrongfulness of

16  Defendants' conduct is clear.  Scribd has extensive evidence of Defendants' flagrant disregard of

17  Scribd's efforts to block their access to Scribd content, as well as of Scribd's rights in the

18  SCRIBD mark and Defendants' use of the mark to falsely insinuate an association with Scribd.

19      **1.    Scribd Is Likely to Succeed on the Merits of Its Computer Fraud and
20            Abuse Act Claim.**

21      The Computer Fraud and Abuse Act ("CFAA") imposes criminal and civil liability on

22  whoever "intentionally accesses a computer without authorization or exceeds authorized access,

23  and thereby obtains . . . information from the computer."  18 U.S.C. § 1030(a)(2)(C).

24      Here, Scribd hosts and displays the Scribd Platform and the UGC content that Defendants

25  are accessing and redistributing on computer servers and high speed data processing devices at

26  storage facilities.  Bentley Decl. ¶ 23.  These computers and devices are used in interstate and

27  foreign commerce and communication, and accessible to users throughout the United States and

28  many countries around the world over the internet.  *Id.*  Scribd's computer servers, databases, and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   data storage facilities thus qualify as "protected computers" under the CFAA.  18 U.S.C. §

2   1030(e).

3        Despite Scribd's attempts to block Defendants' IP address, its contact with Defendants'

4   hosting provider, its notification to Defendants that they have no authorization to access the

5   Scribd.com website and its contents, and its demand that Defendants discontinue operating

6   Scribd-Download.com, Defendants continue to access and take content from the Scribd Platform

7   without authorization and make it available for download for free through Scribd-

8   Download.com.  Bentley Decl. ¶ 23.

9        Accordingly, Scribd has shown that it is likely to succeed on the merits of its CFAA

10  claim.  *See Facebook Inc. v. Power Ventures, Inc. et al.*, 844 F.3d 1058, 1065-66 (9th Cir. 2016)

11  (holding that continued access is likely to be considered "without authorization" or "exceed[ing]

12  authorized access" under the CFAA where defendant continues to access even after website

13  explicitly revoked permission and sent cease and desist letter), *petition for cert. filed*, 85

14  U.S.L.W. 3470 (U.S. Mar. 9, 2017) (No. 16-1105); *Craigslist v. 3Taps Inc.*, 942 F. Supp. 2d 962,

15  969-70 (N.D. Cal. 2013) (finding unauthorized access under the CFAA where defendant

16  continued to scrape data from Craigslist's site after Craigslist notified defendant that its access

17  was not authorized and blacklisted defendant's IP addresses).

18       Scribd has a private right to sue to enforce the CFAA under 18 U.S.C. §§ 1030(g),

19  1030(c)(4)(A)(i)(I).  Defendants' conduct has caused—and continues to cause—damages to

20  Scribd in excess of $5,000, including diverted traffic from Scribd.com, lost subscription fees, and

21  the expense of investigation and remediating Defendants' conduct.  Bentley Decl. ¶ 23.

22       **2.**       **Scribd Is Likely to Succeed on the Merits of Its Cybersquatting Claim.**

23       Cyberpiracy under the Anticybersquatting Consumer Protection Act consists of (1)

24  registering, trafficking in, or using a domain name that (2) is identical or confusingly similar to a

25  protected mark owned by the plaintiff (3) with "a bad faith intent to profit from that mark."  15

26  U.S.C. § 1125(d); *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

27          **a.**      **Defendants Registered and Are Using the Scribd-Download.com Domain Name.**

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Defendant Johny Hendricks registered Scribd-Download.com on October 26, 2016. Bentley Decl. ¶ 18, Ex. 5.  Defendants are using Scribd-Download.com to profit by collecting revenues from advertising displayed on their site,[1] while attracting viewers to the page by use of the SCRIBD mark and supplying Scribd content for free.  Bentley Decl. ¶ 11.

### b. Defendants' Domain Names Include and Is Nearly Identical to Scribd's Protected SCRIBD Mark.

Defendants' domain, Scribd-Download.com, is confusingly similar to, and includes the entirety of, Plaintiff's federally registered mark SCRIBD.  Plaintiff's mark is fanciful, distinctive and famous, with over 80 million users.  Scribd's federal registration of SCRIBD evidences the distinctiveness of the mark.  *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009).

### c. Defendants Acted with Bad Faith.

Defendants selected and use the Scribd-Download.com domain name with undeniable bad faith intent to profit from the false association with Scribd.  Defendants registered the domain name over six years after the SCRIBD mark was registered and after the Scribd brand had gained fame and popularity.  Bentley Decl. ¶ 18, Ex. 5.  The combination of factors listed in 15 U.S.C. 1125(d) strongly indicate bad faith.

1) Defendants have no trademark or other intellectual property rights in the domain name. This factor favors bad faith.

2) 'Scribd' is not the name of any persons generally, and certainly bears no resemblance to the name of Defendants.  Defendants' invented "coincidence" that Scribd serves as an acronym for "Speedy crazy randomly internet book & document download" does not change the analysis.  Chiang Decl., ¶ 7, Ex. D.  Nor does Defendants' subsequent attempts to remove all references of Scribd.com from their website.  Chiang Decl. ¶ 9, Ex. F.  This factor favors bad faith.

3) Defendants do not and, to the best of Scribd's knowledge, have not in the past offered any

---

[1] The website presents users with a basic search bar surrounded by ads that change regularly. Bentley Decl. ¶ 11.  The html code for the website reflects that the ads are being served through Google, which provides websites with ads and a share of the revenue from those ads through its AdSense service. *Id.*

Fenwick & West LLP
Attorneys at Law
San Francisco

bona fide goods or services using the domain names.  This factor favors bad faith.

4) Defendants do not make a bona fide noncommercial or fair use of the SCRIBD mark in their website.  Instead, they use the domain to offer Scribd's *own content* for free, and to generate ad revenue, which is inherently commercial in nature.  Bentley Decl. ¶ 11.  This factor favors bad faith.

5) Defendants' use of the SCRIBD mark in their domain name demonstrates their intent to divert consumers from Scribd.com to Scribd-Download.com for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.  This factor favors bad faith.

6) Defendants' domain name registration includes material and misleading false contact information.  Indeed, a search for Defendant Hendricks's street address as listed on the "Who Is" domain registration reveals that the address does not exist and is invalid.  Bentley Decl. ¶ 18.  This factor favors bad faith.

7) Defendants registered the domain name Scribd-Download.com, which Defendants knew was confusingly similar to the SCRIBD mark—indeed their website targeted Scribd.com users to paste in Scribd.com URLs.  Bentley Decl. ¶ 17, Ex. 4.  The SCRIBD mark was distinctive at the time of registration of the Scribd-Download.com domain name, and Scribd-Download.com is dilutive of Scribd's famous mark.  This factor favors bad faith.

8) As demonstrated above, the SCRIBD mark was distinctive and famous at the time Defendant registered the domain names.  Indeed, the word "Scribd" has no meaning in English, other than to refer to Plaintiff Scribd, Inc.  Bentley Decl. ¶ 8.  This factor favors bad faith.

All of these Section 1125(d) factors favor a finding of bad faith intent to profit. Given (1) Defendants' registration and use of Scribd-Download.com, which (2) incorporates the entirety of or is nearly identical to Plaintiff's registered SCRIBD mark, (3) to direct users to a bare bones website littered with ads and offering Scribd's own content for free, Scribd is likely to succeed on its cyberpiracy claim.

1

### 3.    Scribd Is Likely to Succeed on the Merits of Its Trademark Infringement, False Designation of Origin, and Unfair Competition Claims.

2

3      Trademark infringement, false designation of origin, and unfair competition under Ninth

4   Circuit and California law share two basic requirements: (1) the plaintiff has a protectable mark,

5   and (2) the defendant's use of a similar mark is likely to confuse or deceive consumers.  To

6   establish trademark infringement under 15 U.S.C. § 1114 or false designation of origin under 15

7   U.S.C. § 1125(a), Scribd must show that 1) it has a valid, protectable trademark and 2)

8   Defendants subsequently and without authorization used a similar mark likely to cause consumer

9   confusion, deception, or mistake.  *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*,

10   174 F.3d 1036, 1046 (9th Cir. 1999).  Similarly, a claim of trademark infringement under

11   California common law requires prior use of the trademark and the likelihood of the infringing

12   mark being confused with the plaintiff's mark.  *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48

13   (N.D. Cal. 2005).  Further, a plaintiff must show likelihood of confusion by use of a similar

14   business name to state a claim for unfair competition.  *Century 21 Real Estate Corp. v. Sandlin*,

15   846 F.2d 1175, 1180 (9th Cir. 1988) (citing *In re Marriage of Shelton*, 118 Cal. App. 3d 811, 816,

16   173 Cal. Rptr. 629, 631 (1981)).  Here, Scribd's claims meet both those elements.

17      First, Scribd owns a valid and protectable mark.  Bentley Decl., ¶ 9, Ex. 1.  Scribd's

18   registration of the SCRIBD mark on the Principal Register in the Patent and Trademark Office is

19   prima facie evidence of the validity of the mark.  *Brookfield Communications, Inc. v. W. Coast

20   Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *see* 15 U.S.C. §§ 1057(b), 1115(a).

21      Second, Defendants' use of the identical SCRIBD mark in connection with Scribd-

22   Download.com is likely to deceive consumers about Defendants' association with Scribd.  The

23   Ninth Circuit applies the *Sleekcraft* factors in determining likelihood of confusion: "(1) the

24   similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing

25   channel used; (4) the strength of [Scribd]'s mark; (5) [Scribd Download]'s intent in selecting its

26   mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8)

27   the degree of care likely to be exercised by purchasers." *GoTo.com, Inc. v. Walt Disney Co.*, 202

28   F.3d 1199, 1205 (9th Cir. 2000).  Here, the *Sleekcraft* factors weigh in favor of finding a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   likelihood of confusion:

2        <u>Similarity of mark and relatedness of the two companies' services</u>.  Defendants

3   incorporate the exact same SCRIBD mark to make Scribd's *own content* available for download

4   on Scribd-Download.com, all without requiring users to register for a Scribd account or pay

5   Scribd's membership fee.  Bentley Decl. ¶¶ 11–13.  The two marks are thus similar, and being

6   used in connection with identical services—*i.e.*, the sharing of Scribd's library of digital content.[2]

7        <u>Marketing channel used</u>.  Scribd-Download.com makes its content available through

8   Google's organic search results, in much the same way as Scribd.  Indeed, many users find

9   content on Scribd—and become familiar with Scribd.com in the first place—by searching for

10  content using a search engine like Google.  Bentley Decl. ¶ 15.  Users can similarly locate content

11  on Scribd-Download.com via Google search results.  *Id.*  In fact, a listing to Scribd-

12  Download.com often appears directly below or in close proximity to the Scribd.com listing on a

13  Google search results page.  *See, e.g.*, *Id.*, Ex. 2.

14       <u>Strength of the SCRIBD mark</u>.  Scribd has used the word mark SCRIBD to represent its

15  products and services since the company's launch in 2007, and is recognized by readers around

16  the world as a brand that cultivates and promotes the sharing of written knowledge.  Bentley

17  Decl. ¶¶ 2–3, 8–10.  The mark is fanciful and distinctive; indeed, "Scribd" has no meaning in

18  English other than to refer to Scribd, Inc.  Bentley Decl. ¶ 8.  Courts have recognized that

19  inherently distinctive marks that have gained widespread commercial fame are strong.  *See Levi*

20  *Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1166 (9th Cir. 2011) (finding

21  famous and distinctive marks are more likely to be entitled to an injunction).

22       <u>Defendants' intent in selecting SCRIBD mark</u>.  Defendants' bad faith intent in selecting

23  the SCRIBD mark is clear: Scribd-Download.com explicitly referred to Scribd.com multiple

24  times, and touted itself as "a best [sic] online scribd downloader service that allow [sic] you to

25

26  [2] Although Scribd-Download.com only makes available a subset of the content available on the
    Scribd Platform (namely, UGC content), this does not change the analysis that the two marks are
27  being used in connection with identical services.  *See Pom Wonderful LLC v. Hubbard*, 775 F.3d
    1118, 1127 (9th Cir. 2014) ("Related . . . services . . . are those which would be reasonably
28  thought by the buying public to come from the same source if sold under the same mark" and just
    need to be "goods [that] are similar in use and function" (internal quotation marks omitted).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

1   download documents from Scribd.com for free.  You only need to input Document URL, we will

2   get the download link and send it to your browser.  Our service is totally free."  Bentley Decl.

3   ¶ 17, Ex. 4.  Defendants' preposterous claim that "Scribd-Download" is being used as an acronym

4   for "Speedy crazy randomly internet book & document download," and their subsequent

5   (unsuccessful) attempts to remove all references to Scribd.com on their website, is further

6   evidence of their bad intent to trade off the goodwill of the SCRIBD mark.  Chiang Decl. ¶¶ 8–9;

7   *Brookfield Communications*, 174 F.3d at 1059 ("When an alleged infringer knowingly adopts a

8   mark similar to another's, courts will presume an intent to deceive the public." (citation omitted)).

9         Evidence of actual confusion.  That internet users are already actually confused as to the

10   source, origin, or sponsor of Scribd-Download.com is evident from the DMCA notices received

11   by Scribd, in which authors are requesting the Scribd remove their content from Scribd-

12   Download.com under the mistaken impression that the two websites are affiliated.  Bentley Decl.

13   ¶¶ 16, 25, Ex. 3.

14         Likelihood of expansion into other markets.  Because Scribd-Download.com is *already*

15   directly in Scribd's market, this factor favors Scribd.

16         Degree of care likely to be exercised by purchasers.  As explained above, when users are

17   searching for a particular written work on Google, the Scribd-Download.com link often appears

18   directly below or in close proximity to the Scribd.com link.  Users conducting a quick Google

19   search are thus unlikely to exercise a great deal of care in discerning the difference between the

20   two websites, and in fact, may be more likely to click on the Scribd-Download.com listing, which

21   allows the download of Scribd content for free.  Bentley Decl. ¶¶ 15, 14.

22         On balance, the *Sleekcraft* factors show that Defendants' use of the SCRIBD mark is

23   likely to confuse consumers.  Accordingly, Scribd is likely to succeed on the merits of its

24   trademark infringement, false designation of origin, and unfair competition claims.

25              **4.      Scribd Is Likely to Succeed on the Merits of Its Trademark Dilution
                         Claim.**

26

27         To succeed on a trademark dilution claim, Scribd must "show that (1) the mark is famous

28   and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  began after the mark became famous; and (4) the defendant's use of the mark is likely to cause

2  dilution." *Levi Strauss & Co.*, 633 F.3d at 1168.  Under California's trademark dilution statute,

3  "[s]ubject to the principles of equity, an owner of a mark that is famous and distinctive, whether

4  inherently or through acquired distinctiveness, shall be entitled to an injunction against another

5  person's commercial use of a mark or trade name, if such use begins after the mark has become

6  famous and is likely to cause dilution of the famous mark, and to obtain such other relief as is

7  provided in this section."  Cal. Bus. & Prof. Code § 14247.

8      Scribd has been using its fanciful, distinctive SCRIBD mark since the company launched

9  in 2007 and has used it to promote its content sharing platform and develop a brand that readers

10  around the world associate with the sharing of written knowledge.  Bentley Decl. ¶¶ 3, 8.

11      Defendants' use of the SCRIBD mark on Scribd-Download.com is likely to dilute the

12  mark by continuing uses unaffiliated with the mark's owner for precisely the services the mark-

13  owner offers.  Further, Defendants' use will tarnish Scribd's reputation by associating it with a

14  bare-bones website riddled with typos and ads that detract from the user's experience.  Bentley

15  Decl. ¶ 31  The distinctiveness and value of the SCRIBD mark will be lessened with the 80

16  million Scribd users every day that another website named Scribd-Download.com continues to

17  operate and cloud the field.  *Id.*

18  **C.      Defendants' Actions Have Caused and Will Continue to Cause Irreparable
              Harm to Scribd.**

19

20      Defendants' flagrant misuse of Scribd's trademark and continued access and download of

21  content from the Scribd Platform in defiance of Scribd's repeated efforts to stop them will cause

22  irreparable harm absent immediate injunctive relief.

23      Irreparable harm is undeniable here.  As the Ninth Circuit has held, "intangible injuries,

24  such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm" because

25  they are difficult to value.  *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,

26  944 F.2d 597, 603 (9th Cir. 1991) (affirming preliminary injunction to protect the plaintiff's

27  "advertising efforts and goodwill"); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559

28  F.3d 1046, 1057 (9th Cir. 2009) ("a loss of goodwill and reputation" can support injunctive

1   relief).  Irreparable harm may be based on "[e]vidence of loss of control over business reputation

2   and damage to goodwill" or based on damage to recruitment efforts.  *Herb Reed Enters., LLC v.*

3   *Fla. Entm't Mgmt., Inc*, 736 F.3d 1239, 1250 (9th Cir. 2013); *Rent-A-Center*, 944 F.2d at 603

4   (irreparable injury may be found based on "damage to ongoing recruitment efforts").  Similarly, a

5   threatened loss of prospective customers also constitutes irreparable harm.  *Super-Krete Int'l, Inc.*

6   *v. Sadleir*, 712 F. Supp. 2d 1023, 1037-38 (C.D. Cal. 2010) (granting preliminary injunction in

7   cyberpiracy case).

8          Defendants' registration and use of Scribd-Download.com to offer Scribd's content for

9   free and continued unauthorized access of the Scribd Platform is diverting and confusing an

10  untold number of potential customers and causing harm to Scribd in ways that will be difficult or

11  impossible to compensate or redress.  *First,* by registering and using a confusingly similar domain

12  to offer Scribd content, Scribd-Download.com creates a likelihood that internet users (including

13  Scribd users and potential Scribd users) and the public will believe that Scribd is the source,

14  origin, or sponsor of Scribd-Download.com, or that Scribd otherwise approves of or is affiliated

15  with Scribd-Download.com.  Bentley Decl. ¶ 25.  That users are already confused as to the

16  source, origin, or sponsor of Scribd-Download is evident from the DMCA notices that Scribd has

17  received.  *Id.*, Ex.  3.

18         *Second*, Defendants are directly diverting customers from Scribd.  Bentley Decl. ¶ 26.

19  When searching for certain UGC works on Google, a Scribd-Download.com link to the document

20  often appears right below or in close proximity to the corresponding Scribd.com link.



FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Id.*, Ex. 2.  The untold number of customers who click the Scribd-Download.com links are potential customers lost to Scribd who never will visit the Scribd.com website.  Bentley Decl. ¶ 26.  Moreover, the proximity of the Scribd-Download.com results, along with the similarity of the two domain names, is likely to lead users to believe that the two websites are somehow affiliated with one another, and to click the (infringing) one that says "download" in the first instance.  *Id.*

*Third*, Defendants are depriving Scribd of revenues from untold number of customers who actually visit Scribd's website, insofar as Defendants allow visitors to their website to obtain Scribd archived materials without paying the subscription fee required by Scribd for access to them.  Bentley Decl. ¶ 27; *see China Cent. Television v. Create New Tech. (HK) Ltd.*, 2015 WL 3649187, at *12 (C.D. Cal. June 11, 2015) ("Unauthorized and uncompensated internet streaming that competes directly with the television programming of a copyright owner and its authorized licensees causes harm that is 'neither easily calculable, nor easily compensable.'").

*Fourth*, Defendants are adversely impacting Scribd's ability to market its services to its customers and potential customers.  Bentley Decl. ¶ 28.  Of course, when a customer doesn't visit Scribd at all (because it finds Scribd's content directly by a search result listing Scribd-Download.com), Scribd can't market to that customer.  *Id.*  If a customer does visit Scribd but does not register, Scribd is not able to market to that customer and cannot effectively track her interests.  *Id.*  Further, whether or not registered with Scribd, if a customer downloads content elsewhere (through the Scribd-Download.com website), Scribd is unable to know of that customer's interest in that download so as to focus product offerings on what the customer might like.  *Id.*  Because Scribd relies heavily on conversion of registered (but unpaid) users into paying users to sustain its business, Scribd-Download.com's diversion of traffic from Scribd.com undermines Scribd's business model and is causing irreparable harm.  *Id.*; *see Cherokee Inc. v. Wilson Sporting Goods Co.*, 2015 WL 12656935, at *8 (C.D. Cal. June 19, 2015) (damaging a business model through bad faith infringement supports issuing a temporary restraining order).

*Fifth*, Defendants are impairing Scribd's search engine ranking and optimization efforts for Google.com.  Bentley Decl. ¶ 29.  As explained in the Bentley Declaration, Scribd-

1  Download.com damages Scribd's search rankings and reduces the web traffic critical to its

2  business by reducing the time users spend on the Scribd.com website (when they move to Scribd-

3  Download.com to perform a download), and by providing competitive search results that deprives

4  Scribd of clicks.  *Id.*  In essence, the lifeblood of Scribd's business—internet traffic—is being

5  threatened by a competitor that is using Scribd's own mark and accessing Scribd's own content

6  without authorization.  *Id.*

7         The damage to Scribd from these lost opportunities is already substantial: indeed, Scribd's

8  servers are receiving 1 to 4 requests *per minute* from Scribd-Download.com to download content

9  from the Scribd Platform.  Bentley Decl. ¶ 30.  Scribd is losing revenue, customer visits,

10  conversions, and search engine rankings in incalculable amounts from these diverted customers.

11  *Id.*

12         *Finally*, Defendants' use of the SCRIBD mark on Scribd-Download.com is likely to dilute

13  and tarnish Scribd's reputation by associating it with a bare-bones website riddled with typos and

14  ads that detract from the user's experience.  Bentley Decl. ¶ 31; *see Panavision Intern., L.P. v.*

15  *Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998).

16         **D.    The Balance of Harms Sharply Favors Scribd.**

17         "In each case, a court must balance the competing claims of injury and must consider the

18  effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v.*

19  *Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  As applied to trademark cases, "courts will

20  not shy away from issuing preliminary injunctive relief, where to do so would be to aid a second

21  comer who has sought to trade upon the efforts and good will of the first comer." *Moroccanoil,*

22  *Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (internal citation

23  omitted), *overruled on other grounds by Anhing Corp. v. Thuan Phong Co.*, 2013 WL 11328422

24  (C.D. Cal. Dec. 26, 2013); *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 974 (N.D. Cal. 2015)

25  (granting preliminary injunction in CFAA case).

26         Here, Defendants are "intentionally trying to trade upon the efforts and goodwill

27  established by Plaintiff." *Moroccanoil*, 590 F. Supp. 3d at 1282.  As explained above, Scribd will

28  suffer substantial harm to its reputation, goodwill and customer base if this Court does not issue a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    temporary restraining order.  Furthermore, unless this Court locks the Scribd-Download.com

2    domain name, Defendant could transfer the domain to another registrant while this case is

3    pending, which would force Scribd to file new claims against third parties potentially beyond this

4    Court's jurisdiction.  *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1037 (C.D. Cal.

5    2010) (in cyberpiracy case, possibility that Defendant could sell domain weighed in plaintiff's

6    favor).

7            Defendants, on the other hand, would suffer little or no cognizable injury from a

8    restraining order.  The Court would only be prohibiting Defendant from defrauding the public,

9    violating a criminal computer access statute, and profiting from infringement, which is not an

10   injury.  *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) ("[A]

11   defendant who knowingly infringes another's copyright cannot complain of the harm that will

12   befall it when properly forced to desist from its infringing activities." (internal citation omitted));

13   *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only

14   hardship that the defendant will suffer is lost profits from an activity which has been shown likely

15   to be infringing, such an argument in defense merits little equitable consideration on an appeal

16   from a preliminary injunction." (internal citation omitted)), *superseded on other grounds as*

17   *stated in Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011).  Any injury the Defendants

18   suffer would be a loss of illegal fruits of their own bad-faith infringement of the SCRIBD mark,

19   which does not weigh in their favor.  *Moroccanoil*, 590 F. Supp. 2d at 1282 ("[A]ny injury that

20   Defendants may suffer if preliminarily enjoined may be discounted by the fact that Defendants

21   brought the injury upon themselves by intentionally adopting deceptively similar trademarks.").

22   The balance of equities therefore weighs sharply in favor of a temporary restraining order.

23       **E.     Allowing Defendants to Maintain Their Deceptive Website Would Not Serve**
             **the Public Interest, So a Restraining Order Is Appropriate.**
24
         The public interest element of the preliminary injunction test asks "whether there exists
25
     some critical public interest that would be injured by the grant of preliminary relief."  *Indep.*
26
     *Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (internal citation
27
     omitted), *vacated and remanded on other grounds by Douglas v. Indep. Living Ctr. of So. Cal.,*
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Inc.*, 565 U.S. 606 (2012).

2        Here, Defendants' website and continued unauthorized access of the Scribd Platform

3    violates the criminal law, deceives the public as to its affiliation with Scribd, and presents users

4    with a negative user experience.  "As the public has a right not to be deceived or confused, the

5    public interest and goals of the Lanham Act favor an injunction."  *Moroccanoil*, 590 F. Supp. at

6    1282; *see also F.T.C. v. John Beck Amazing Profits, LLC*, 2009 WL 7844076, at *16 (C.D. Cal.

7    Nov. 17, 2009) ("the public interest in preventing further misleading and deceptive practices is

8    great" and outweighs the Defendant's "interest in continuing to advertise and market its products

9    and services in the same manner").  This Court should protect the public interest with an

10   immediate restraining order.

11   **IV.    THE COURT SHOULD GRANT LEAVE FOR SCRIBD TO SUBPOENA THIRD
            PARTY INTERNET SERVICE PROVIDERS TO DETERMINE DEFENDANTS'**
12   **        IDENTITIES**

13       Courts often grant leave pursuant to Fed. R. Civ. P. 45 to subpoena third parties where

14   good cause—such as the inability to identify a defendant—is shown.  *See, e.g.*, *UMG Recording,*

15   *Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal. 2008) (allowing subpoena of third-part internet

16   service provider to identify an unknown defendant where plaintiff made showing of good cause);

17   *Malibu Media, LLC v. Doe*, 2016 WL 1618227, at *4 (S.D. Cal. April 22, 2016) (granting leave

18   to serve third party subpoena on defendants' ISP for the limited purpose of discovering

19   defendant's identity).  In *UMG Recording*, the court granted leave to subpoena third party internet

20   service providers where plaintiff demonstrated good cause by showing (1) a prima facie case for

21   infringement, (2) the inability to identify the defendant, known only by his IP address, other than

22   by a Rule 45 subpoena issued to examine its ISP logs, and (3) a risk that the logs containing

23   identifying information could be destroyed absent expedited discovery.  2008 WL 4104214, at *4.

24       Here, for the reasons explained above, Scribd has made a prima facie case for

25   infringement, cyberpiracy, and violations of the CFAA.  Although Scribd has made contact with

26   Scribd-Download.com by email, Scribd presently has less than definitive information as to the

27   corporate form of the entity Defendant and as to the identity and location of the persons that are

28   operating that website.  Chiang Decl. ¶ 11.  Indeed, Scribd has had little success identifying

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants beyond the email addresses associated with Scribd-Download.com, *see* Chiang Decl.

2   ¶¶ 2–6, but knows from its independent investigation that there are several U.S. entities known to

3   have business dealings with Scribd-Download.com, including, without limitation, Heymman

4   Servers and Cloudflare, Inc.  Bentley Decl. ¶ 20; Chiang Decl. ¶ 11.  Accordingly, Scribd

5   requests that the Court immediately authorize issuance of subpoenas to the U.S. entities known to

6   have business dealings with Scribd-Download.com.  Chiang Decl. ¶ 11.  The subpoenas will

7   request information as to both the identities of those persons and entities acting on behalf of

8   Scribd-Download.com by name, as well as identifying information for the user of IP address,

9   determined by Scribd to be used for Scribd-Download.com, IP 185.191.228.145. *Id.*.  Issuance of

10  these subpoenas is also warranted because the identifying information—which is likely kept in

11  the third parties' ordinary course of business and subject to their document destruction policies—

12  could be destroyed absent expedited discovery.

13  **V.    CONCLUSION**

14        Because Scribd and the public overwhelmingly deserve an injunction to halt Defendants'

15  continued unauthorized access of Scribd's content and infringing conduct, this Court should grant

16  a restraining order as Scribd has proposed.

17

18   Dated:  May 15, 2017                          FENWICK & WEST LLP

19

20                                              By: */s/ Laurence Pulgram*
                                                    LAURENCE PULGRAM

21
                                                Attorneys for Plaintiff
22                                              SCRIBD, INC.

23

24

25

26

27

28